# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DISTRICT

FARID HERMIZ *as personal representative of the* ESTATE OF MYRA HERMIZ, *and all others similarly situated,*

*Plaintiff*

*vs*

WAYNE J. MILLER (P31112) a lawyer licensed in the State of Michigan; MILLER & TISCHLER, PC, a *Michigan professional corporation (referred collectively as Miller*; VHS OF MICHIGAN, d/b/a DETROIT MEDICAL CENTER (VHS); *jointly and severally,*

*Defendant.*

Case No.: _____

Judge: Hon. _____

---

Brian Thomas Dailey (P39945)
William D Savage (P82146)
**THE DAILEY LAW FIRM, PC**
*Attorneys for Plaintiffs*
63 Kercheval Avenue, Suite 215
Grosse Pointe Farms, MI 48236
P: 313-640-1111 | F: 313-640-9999
briandailey@daileylawyers.com
will@daileylawyers.com

---

## PLAINTIFF'S VERIFIED COMPLAINT
## AND DEMAND FOR TRIAL BY JURY

NOW COMES Plaintiff, FARID HERMIZ, as personal representative of the Estate of MYRA HERMIZ, on behalf of itself and all other similarly situated individuals, by and through its attorneys at the Dailey Law Firm, PC, and hereby complains and demands the following:

## INTRODUCTION

This action involves wrongfully collected medical bills and asks that the total amount of the illegal collections be disgorged back to the plaintiffs. Specifically, Defendant VHS has through one or more of its several Michigan health care providers, including but not limited to: Children's Hospital of Michigan-Main Campus; Children's Hospital of Michigan-Troy Campus; Detroit Receiving Hospital; DMC Harper University Hospital; DMC Heart Hospital; DMC Huron Valley-Sinai Hospital; DMC Hutzel Women's Hospital; DMC Rehabilitation Institute of Michigan; DMC Sinai-Grace Hospital; Center for Spinal Cord Injury Recovery Hospital; Children's Alex J. Etkin Specialty Center – Southfield; Children's Hospital of Michigan – Emergency; Children's Hospital of Michigan – Troy – Emergency; Children's Hospital of Michigan Specialty Center – Canton; Children's Hospital of Michigan Specialty Center – Detroit; Children's Hospital of Michigan Stilson Specialty Center – Clinton Township; Children's of Michigan Specialty Center – Dearborn; DMC Advanced Family Care of Commerce; DMC Behavioral Health – Ardmore Clinic; DMC Berry Surgical Center; DMC Commerce

Medical Center; DMC Detroit Receiving Hospital – Emergency; DMC Family Medicine Center – Detroit; DMC Harper Bariatric Medicine Institute – Madison Heights; DMC Harper Outpatient Surgery Center; DMC Harper University Hospital – Emergency; DMC Huron Valley-Sinai Hospital – Emergency; DMC Sinai-Grace Cancer Center; DMC Sinai-Grace Hospital-Emergency; DMC Sinai Grace Professional Building; DMC Specialty Center-Farmbrook; DMC Sports Medicine and Orthopedic Surgery – Dearborn; DMC University Laboratories, Farmbrook Medical Building; Harris Birthing Center at DMC Huron Valley-Sinai Hospital; Joint Plus Excel Orthopedic Center; Joint Plus Excel Orthopedic Services-Detroit; Lahser Endoscopy Center; Metropolitan Primary Care Center; Northwest Womens Care-Farmington Hills; Northwestern Womens Care-Grand River Ob/Gyn; Northwest Womens Care-W. Eight-Mile Rd; Novi Rehabilitation Center; Rehabilitation Center of Michigan (RIM) Clinton Township Center at Powerhouse Gym; Rehabilitation Institute of Michigan at Crown Pointe; Rehabilitation Institute of Michigan at Ford Performing Arts Center; Rehabilitation Institute of Michigan at Franklin Athletic Club; Rehabilitation Institute at Huron Valley-Sinai Hospital; Rehabilitation Institute of Michigan at Livonia YMCA; Rehabilitation Institute of Michigan at Mack Athletic Club; Rehabilitation Institute of Michigan at Macomb YMCA; Rehabilitation Institute of Michigan at Milford YMCA; Rehabilitation Institute of Michigan at Pointe Fitness & Training Center; Rehabilitation Institute of

Michigan at Troy Community Center; Rehabilitation Institute of Michigan Ultimate Soccer Arenas; Rehabilitation Institute of Michigan Birmingham Center; Rehabilitation Institute of Michigan Canton Center; Rehabilitation Institute of Michigan Clarkston, Michigan; Rehabilitation Institute of Michigan Madison Heights; Rehabilitation Institute of Michigan New Baltimore; Rehabilitation Institute of Michigan Northwest Detroit; Rehabilitation Institute of Michigan Novi Center; Rehabilitation Institute of Michigan Plymouth Center; Rehabilitation Institute of Michigan Romulus Center; Rehabilitation Institute of Michigan Shelby Township; Rehabilitation Institute of Michigan Sterling Heights; Rehabilitation Institute of Michigan Trenton Athletic Center; Rehabilitation Institute of Michigan West Bloomfield Center; Sinai Grace Cosmetic & Laser Center; University Health Center; University Health Center Lab; and University Health Center Outpatient Clinics; been accepting Medicaid payments for medical services provided to indigent individuals and then later suing those indigent individuals and/or intervening in injury litigation of those indigent individuals seeking payment of the exact same medical services after accepting payment for same made by Medicaid and/or balance billing.

Both state and federal Medicaid laws and regulations require a provider to only accept payment from Medicaid as "payment-in-full" for the Medicaid-eligible persons medical debt. See 42 U.S.C. §1396a(a)(25) of the Social Security Act; 42.

U.S.C. §1396o(a)(3); 42 C.F.R. §447.15; 42 C.F.R. §483.12(a)(2)(v); 42 C.F.R. §483.10(c); M.C.L. §400.111b under the Social Welfare Act of Michigan; and §14.1 of the Michigan Medicaid Provider Manual. The United States Court of Appeals for the Sixth Circuit has already previously found that: "All the courts which have considered the issue of whether a service provider, who has already accepted a Medicaid payment, may recover additional sums after a patient has received damages in a personal injury lawsuit have denied the provider's claim." *Spectrum Health Continuing Care Group v Anna Marie Bowling Irrevocable Trust*, 410 F3d 304, 314 (CA 6, 2005). Counsel for Plaintiff, Spectrum Health Continuing Care Group, which was seeking to collect additional sums after accepting Medicaid payment was Defendant, Wayne J. Miller in this case.

Upon information and belief, the defendants in this case have been conducting this illegal practice for over a decade. The total amounts of money illegally collected by these defendants is likely in the millions of dollars. Plaintiffs will be seeking class certification in this case so that the individuals harmed (or their estates) and/or representatives can potentially receive some justice for the illegal practices of Defendants. Plaintiff will further be seeking disgorgement of all attorney fees paid and/or received by Miller for his efforts in pursuing such illegal collection activities. Plaintiff will be seeking all damages available under Federal and Michigan State Law.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that the action arises under federal Medicaid law, Title XIX of the Social Security Act, 42 U.S.C. §1396 et seq.

2. Venue is proper in the United States District Court, Eastern District of Michigan, Southern Division, pursuant to 28 U.S.C. §1391(a), (b), and (c) because "a substantial part of the events or omissions giving rise to the claim occurred" in this district, and "defendant[s] [are] subject to the court's personal jurisdiction with respect to the civil action in question." *Id*. For the non-individual defendants, personal jurisdiction is apparent pursuant to Fed. R. Civ. P. 4(k)(1)(A), which grants personal jurisdiction to a district court to the same extent that the state courts of general jurisdiction in the state in which the district court resides has jurisdiction. Here, Mich. Comp. Laws § 600.705 provides Michigan courts with personal jurisdiction over those that "transact[] any business within the state," such as all Defendants.

## THE PARTIES

3. Plaintiffs incorporate by reference the above numbered paragraphs as if fully restated herein.

4. Plaintiff, Farid Hermiz is the named representative of the Estate of Myra Hermiz. Farid Hermiz files this lawsuit in his representative capacity on

behalf of the Estate of Myra Hermiz. At all relevant times herein, Myra Hermiz was a citizen of the United States and resident of Wayne County, Michigan.

5. Class Plaintiffs consist of individuals or his or her representatives who have been provided medical services by any of Defendant medical providers; who were eligible for Medicaid at the time of those services; which Medicaid in-fact reimbursed one or more Defendants for those services; and which Defendants subsequently sought and received additional payments for those services from the individual or his or her representative.

6. Defendant VHS of Michigan, LLC d/b/a Detroit Receiving Hospital is a foreign for-profit corporation incorporated under the laws of Delaware, with a resident agent located in Wayne County, Michigan.

7. Defendant Miller & Tischler, PC is a domestic professional corporation with its resident agent located in Oakland County, Michigan.

8. Defendant Wayne J. Miller is an individual, attorney, and managing partner and resident agent of Miller & Tischler, PC. At all relevant times herein, Wayne J. Miller was a citizen of the United States and resident of Oakland County, Michigan.

## COMMON ALLEGATIONS

9. Plaintiffs incorporate by reference the above numbered paragraphs as if fully restated herein.

### Myra Hermiz

10. On November 3, 2016, Myra Hermiz sustained injuries as a restrained, backseat passenger in a car collision. As a result of the collision, she suffered a traumatic brain injury, a right rib fracture, mid-sternal fracture, abrasions to the face, chest, and abdomen. She later developed grand mal seizures.

11. Myra Hermiz pain, brain injury and seizures ultimately made life unbearable for her and she took her own life on January 29, 2021.

12. Defendant Detroit Receiving Hospital participated in the Medicaid program whereby it voluntarily contracts with the state of Michigan to provide services for Medicaid-eligible patients in return for reimbursement from the state at specified rates.

13. On January 4, 2017, Medicaid paid Defendant Detroit Receiving Hospital $300.00 for medical services it rendered to Myra Hermiz, a Medicaid-eligible patient at that time the services were rendered in November 2016.

14. In April of 2017, Defendant Detroit Receiving Hospital submitted bills and records to Citizens Insurance Company, in the amount of $27,746.62. **Exhibit A, Excerpt from Miller & Tischler, PC January 4, 2022 Case Summary**.

15. Defendant Detroit Receiving Hospital then referred its claim to its own counsel, Defendant Wayne Miller and Miller & Tischler, PC to pursue payment of funds in excess of what Defendant Detroit Receiving Hospital had already accepted as payment in full from Medicaid. *Id*.

16. On July 16, 2019, Myra Hermiz filed suit in Michigan state court against Citizens Insurance Company (this was the second suit filed by Ms. Hermiz seeking no fault benefits, the first case was filed was Hermiz vs. Citizens Insurance Company, Wayne County Circuit Court Case No. 17-005790-NI before the Honorable John Murphy. This case was dismissed without prejudice while Citizens Insurance Company sought declaratory relief and rescission of the policy Macomb County Circuit Court), seeking uninsured and personal injury protection (PIP) benefits. Hermiz was entitled to uncoordinated benefits as a "resident relative" under the relevant Michigan No Fault Automobile Insurance Policy.

17. On October 17, 2019, Defendant Detroit Receiving Hospital notified Ms. Hermiz's representative, her counsel at the Dailey Law Firm, PC, of its intention to recover benefits paid by Medicaid, including the $300.00 received and accepted by Detroit Receiving Hospital (In November 2018 VHS by its Counsel began it course of illegal collection in the earlier case, i.e. Hermiz vs. Citizens Insurance Company Wayne County Circuit Court Case No. 17-

005790-NI claiming falsely that VHS was entitled to a lien against the proceeds of said litigation to pay the medical bills at issue in this case without an assignment from Hermiz, the Patient. That claim was denied by the Honorable John Murphy and said denial was upheld by the Michigan Court of Appeals (COA No. 342189) and the Michigan Supreme Court (SC No. 157724).

18. On August 28, 2020, Hon. John A. Murphy of Michigan's Third Judicial Circuit Court (Wayne County Case No. 19-009564-NI the refiled case after completion of the litigation in Macomb County Circuit Court seeking Rescission and Declaratory Relief) ordered Citizens Insurance Company to pay Myra HERMIZ the statutorily mandated PIP benefits.

19. On November 19, 2020, Citizens Insurance Company issued a check in the amount of $27,589.62 made payable to Ms. Hermiz's counsel, the Dailey Law Firm, PC and "Detroit Receiving Pharmacy."

20. Defendant Detroit Receiving Hospital then sued Ms. Hermiz' Deceased Estate and took an unlawful default judgment against her estate in the amount of $27,746.62.

21. Defendant Detroit Receiving Hospital sued Ms. Hermiz's representative, her counsel, not only seeking payment for services provided to Hermiz from her

attorney, but also alleging conversion by her representative and demanding treble "damages" and seeking $110,358.48. **Exhibit A, page 4.**

22. Further, Defendant Detroit Receiving Hospital separately sued and obtained a default judgment against Myra Hermiz' Estate for its bill; all in violation of established law.

## Medicaid Law

23. Title XIX of the Social Security Act authorizes payment to states whose medical assistance plans meet the requirements of the federal statute. 42. U.S.C. §1396.

24. To receive federal Medicaid funds, the state must submit a state plan for medical assistance consistent with the mandates set forth in 42 U.S.C. §1396a.

25. 42 U.S.C. §1396a(a)(25) requires, in pertinent part, that a state plan must provide:

> (C) that in the case of an individual who is entitled to medical assistance under the State plan with respect to a service for which a third party is liable for payment, the person furnishing the service may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service…(ii) in the amount which exceeds…(II) the amount by which may be collected [as defined by statute]…

> *Id.* (emphasis added); See also 42 C.F.R. §447.20.

26. The state plan must also provide "such methods of administration …as are found by the Secretary to be necessary for the proper and efficient operation of the plan…" 42 U.S.C. §1396a(a)(4)(A).

27. A method of administration necessary for the proper operation of the medical assistance plan is contained in the federal regulation that requires:

> A State plan must provide that the Medicaid agency must limit participation in the Medicaid program to providers who **accept, as payment in full**, the amounts paid by the agency.
>
> 42 C.F.R. §447.15 (emphasis added).

28. 42 C.F.R. §483.12(a)(2)(v) states, in pertinent part,

> …[f]or a resident who becomes eligible for Medicaid after admission to a facility, the facility may charge a resident only allowable charges under Medicaid…"

29. Federal regulations concerning the rights of residents in long-term care nursing facilities limit the charges to the personal funds of the individual, and state in pertinent part:

> (i) Services included in Medicare or Medicaid payment. During the course of a covered…Medicaid stay, facilities may not charge a resident for the following categories of items and services:
>
> (A) Nursing services as required…
>
> (B) Dietary services as required…
>
> (C) An activities program as required…
>
> (D)  Room/bed maintenance services.

(E) Routine personal hygiene items and services as required to meet the needs of residents,…

(F)  Medically-related social services as required…

\*\*\*

(iii)  Requests for items and services.

(A) The facility must not charge a resident (or his or her representative) for any item or service not requested by the resident.

\*\*\*

(C) The facility must inform the resident (or his or her representative) requesting an item or service for which a charge will be made that there will be a charge for the item or service and what the charge will be.

42 C.F.R. §483.10(c).

30. A Medicaid health care provider may only recover a "nominal" amount for any deduction, cost sharing or similar allowable charges imposed by the state plan from the beneficiary, 42. U.S.C. §1396o(a)(3), as opposed to the full customary charges for its services.

31. In compliance with the federal requirements, Michigan promulgated M.C.L. § 400.111b under the Social Welfare Act, stating in pertinent part:

(1) As a condition of participation, a provider shall meet all of the requirements specified in this section…

\*\*\*

(14) Except for copayment authorized by the state department and in conformance with applicable state and federal law, **a provider shall accept payment from the state as payment in full** by the medically indigent individual for services received. **A provider shall not seek payment from the medically indigent individual, the family, or representative of the individual for…**

(a) **Authorized services provided and reimbursed under the program.**

*Id.* (emphasis added.)

32. Since 2016 to 2022, the language of the Michigan Department of Health and Human Services Medicaid Provider Manual regarding this issue has remained, essentially, unchanged. See **Exhibit B** and **Exhibit C**.

**Section 13 – Reimbursement**

13.1: Payment In Full

**Providers must accept Medicaid's payment as payment in full for services rendered**, except when authorized by Medicaid (e.g., copayments, patient-pay amounts, other cost sharing arrangements authorized by the State). **Providers must not seek nor accept additional or supplemental payment from the beneficiary, the family, or representative in addition to the amount paid by Medicaid, even when a beneficiary has signed an agreement to do so**. This policy also applies to payments made by MHPs and PIHPs/CMHSPs/CAs for their Medicaid enrollees.

Contractors or nursing facility (including ICF/IID) operators must not seek nor accept additional or supplemental payment beyond the patient-pay or MDHHS ability-to-pay amount.

(First bold/underline in original, subsequent added.)

33. Because Defendants elected to receive payments from Medicaid, Defendants, by operation of law, accepted those payments by Medicaid as payment in full for services provided to Plaintiffs.

34. Defendants, however, have sought and received or now seek payments from Plaintiffs for the full customary charges despite having received payment by Medicaid causing beneficiaries and/or their representatives significant financial losses as well as attorney fees and other costs necessary to defend against such illegal collection actions.

35. "Nothing in the statute[s], however, allows for the [Medicaid] program to be used as a financing entity, providing interest-free loans to service providers until the beneficiary's payment arrives. Congress certainly never intended such a result." *Spectrum Health Continuing Care Group v Anna Marie Bowling Irrevocable Trust*, 410 F3d 304, 315 (CA 6, 2005).

36. Upon considering the exact same situation as is now presented before this Court, where medical providers were 1) accepting Medicaid payments for medical services; 2) waiting for the recipients of those medical services to successfully litigate a related personal injury claim and then suing them or their representative for additional sums; and 3) then claiming to repay Medicaid the amounts it had reimbursed the providers for those services, the Sixth Circuit has "reject[ed] the invitation to transform the Medicaid program into an insurance program for hospitals rather than for indigent patients." *Id* at 316.

37. Defendants have each instituted a form of the above-described illegal policy of charging Medicaid for services provided to individuals, then waiting and watching while those individuals or their representatives fight, often for years, to receive benefits, and then stepping in at the last minute with their hands out to reap the fruits of the injured persons efforts, in contravention of the law and the legislature's intent.

38. Defendants have violated both state and federal law by charging the Plaintiffs private pay rates for services provided during the times that they were eligible for Medicaid and for which they previously accepted Medicaid reimbursements.

39. Defendant's violations of federal and state law by seeking payment from the Plaintiffs of additional fees for covered services under Medicaid subjects Defendants to state and federal sanctions.

40. 42 U.S.C. §1320a-7a(a) imposes federal civil penalties and states in pertinent part that any provider who:

> "(2) knowingly presents or causes to be presented to any person a request for payment which is in violation of the terms of…(B) an agreement with a State agency (or other requirement of a State plan under subchapter XIX of this chapter) not to charge a person for an item or service in excess of the amount permitted to be charged…
>
> ***
>
> …shall be subject, in addition to any other penalties that may be prescribed by law, to a civil money penalty of not more than $10,000 for each item or service…In addition, such a person

shall be subject to an assessment of not more than 3 times the amount claimed for each such item or service in lieu of damages sustained by the United States or a State agency because of such claim…In addition the Secretary may make a determination in the same proceeding to exclude the person from participating in the Federal health care programs (as defined in section 1320a-7b(f)(1) of this title) and to direct the appropriate State agency to exclude the person from participation in any State health care program."

41. Federal criminal penalties may also be imposed on:

"Whoever knowingly and willfully—

(1) charges, for any service provided to a patient under a State plan approved under subchapter XIX of this chapter, money or other consideration at a rate in excess of the rates established by the State)… shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both."

42 U.S.C. §1320a-7b(d)(1).

42. In addition, Michigan law provides for the denial, suspension, termination, or probation of a provider's participation in the Medicaid program to protect the welfare of the public and the funds appropriated for the program for violations of policy and law based on federal Medicaid law.  M.C.L. §400.111d; M.C.L. §400.111e(5).

## R.I.C.O.

43. The Racketeer Influenced and Corrupt Organizations ("RICO") Act is a United States federal law that provides for extended criminal penalties and a civil cause of action for acts performed in violation of it. See 18 USC § 1964.

44. 18 USC § 1962(a) holds, in pertinent part, that:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity … to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

45. A "pattern" of racketeering activity is defined as "two acts of racketeering activity within ten years of each other." *Ouwinga v Benistar* 419 Plan Servs, 694 F3d 783, 795 (CA 6, 2012).

46. "Racketeering activity" is statutorily defined at 18 U.S.C. § 1961(1), which states, in pertinent part:

> "[R]acketeering activity" means … (B) any act which is indictable under any of the following provisions of title 18, United States Code: … section 1956… [and] 1957.

47. Section 1956, in turn, holds:

> Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity— … with the intent to promote the carrying on of specified unlawful activity… shall be sentenced…
>
> 18 USCS 1956 (LexisNexis, Lexis Advance through Public Law 117-200, approved October 11, 2022)

48. Section 1957, in turn, holds:

> Whoever… knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a

value greater than $10,000 and is derived from specified unlawful activity, shall be punished…

\*\*\*

(f) As used in this section— …

(3) the terms "specified unlawful activity" and "proceeds" shall have the meaning given those terms in section 1956 of this title.

49. **Accordingly, both sections 1956 and 1957 specify unlawful activity as:**

**"[A]ny act or activity constituting an offense involving a Federal health care offense**."

18 USCS § 1956(c)(7)(F) (emphasis added).

50. To sustain a RICO claim, only a *de minimus* effect on interstate commerce must be shown, and it is shown when the defendant deposits funds derived from unlawful activity into an account at a federally insured banking institution. *United States v. Peay*, 972 F.2d 71, 1992 U.S. App. LEXIS 18136 (4th Cir. 1992), amended, No. 91-5045 (4th Cir. 1992), cert. denied, 506 U.S. 1071, 113 S. Ct. 1027, 122 L. Ed. 2d 172, 1993 U.S. LEXIS 386 (1993), app. after remand, remanded, 73 F.3d 359, 1995 U.S. App. LEXIS 40423 (4th Cir. 1995); see also *United States v. Trammell*, 133 F.3d 1343, 1998 Colo. J. C.A.R. 627, 1998 U.S. App. LEXIS 352 (10th Cir. 1998).

51. Upon information and belief, all Defendants of this action have deposited checks derived from the proceeds of acts that constitute Federal healthcare crimes, into accounts at financial institutions which are federally insured.

**Class Action Allegations**

52. *Definition of class*: Members of the proposed class are defined as:

    a. Individuals who received medical services from VHS of Michigan, LLC (d/b/a Detroit Receiving Hospital) and/or their representatives including but not limited to any of its entities listed hereinabove;

    b. For which VHS of Michigan, LLC and/or any of its owned entities listed hereinabove, billed and received reimbursement from Medicaid ;

    c. Who were also then pursued by VHS of Michigan or their representative for payment of funds for the same medical services which Medicaid previously reimbursed Defendant VHS.

*Numerosity*: Defendants have, admittedly, carried on the illegal practices alleged herein for well over a decade and the statute of limitations stretches back for the majority of the past decade. With Detroit Receiving Hospital being "one of the busiest ambulatory facilities in the country," upon information and belief, the proposed class is so numerous, numbering in the hundreds or thousands, that individual participation by the class members is impracticable. (https://en.wikipedia.org/wiki/Detroit_Receiving_Hospital .)

53. The exact class size need not be known, but only alleged to be in the hundreds or thousands, as the current proposed class surely is. See *In re American Med Sys*, 75 F3d 1069, 1077 (CA 6, 1996) (upholding district

court's certification where "[t]here [was] an assertion [] that there may be

thousands of persons who are in the same position as [p]laintiffs."). See *In re*

*Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996) (explaining that,

while "[t]here is no strict numerical test" for establishing numerosity, a

district court "may consider reasonable inferences drawn from facts" in

considering whether the number of potential plaintiffs renders joinder

impracticable (citing *Senter v. Gen. Motors Corp*., 532 F.2d 511, 523 & n.24

(6th Cir. 1976)). "When class size reaches substantial proportions, however,

the impracticability requirement is usually satisfied by the numbers alone."

*In re American Med Sys*, 75 F3d 1069, 1079 (CA 6, 1996).

54. ***Commonality***: The questions of law and fact presented here are common to

each member of both classes; the primary question of law being: Is it illegal

for providers to accept reimbursement from Medicaid and then seek

additional, private rate, amounts from the Medicaid beneficiaries? The

questions of fact being: Did the class member receive medical services

which were paid for by Medicaid, and then was later pursued for additional

sums by Defendants? See *In re Whirlpool Corp. Front-Loading Washer*

*Prods. Liab. Litig*., 722 F.3d 838, 854 (6th Cir. 2013) ("[E]ach Plaintiff asks

the same basic legal question—whether Defendants' actions were [] illegal—

and the district court reasonably concluded that this was a common question that can be answered on a class-wide basis.")

55. **Typicality**: The typicality consideration is often subsumed by commonality considerations. Here, it can be said that the Named Plaintiff's claims are typical of the proposed class, the claims of which will be typical of each other, as the operative facts will are few and the same for each member: Did they receive medical services from Defendant VHS which were reimbursed by Medicaid, and for which VHS then sought additional funds from the individual and/or their representative prior to or without paying back Medicaid? The nature and extent of the medical services provided are inconsequential to the question of liability, as are the amounts billed, reimbursed, and sought by Defendants. *Sterling v. Velsicol Chem. Corp*., 855 F.2d 1188, 1197 (6th Cir. 1988) ("No matter how individualized the issue of damages may be, determination of damages may be reserved for individual treatment with the question of liability tried as a class action.") (Internal quotations removed.)

56. **Adequacy of representation**: The Named Plaintiff will adequately serve to represent the interests of all of the class members for many reasons, including that the Named Plaintiff rightfully feels aggrieved by Defendants' misconduct towards their beloved deceased family member, Ms. Myra

Hermiz for unlawfully interfering in her underlying litigation without a basis upon which to file a claim and later obtaining a $27,746.62 judgment against the Estate of Myra Hermiz all in violation of the law.

57. ***Fed. R. Civ. P. 23(b)(3) class type***: The federal rules provide for three types of class actions at rule 23(b)(1), (2), and (3). This action is for money damages, so it falls under subrule (3), which states:

> (3) [Certification is appropriate when] the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> (D) the likely difficulties in managing a class action.

58. Subsections (3)(A) and (3)(B) are addressed above. As to subsection (3)(C), this is the most desirable forum for this action as both Defendants businesses are established here.

59. As to subsection (3)(D), again, the relevant questions of law and fact common to all class members are so few that there should be no difficulty in managing this class action.

60. ***Class action superiority and efficiency***: According to the Sixth Circuit and

United States Supreme Court:

> Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." *Id.* at 701, 99 S. Ct. at 2557. For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Ibid.*

> *In re American Med Sys*, 75 F3d 1069, 1080 (CA 6, 1996) citing *Gen Tel Co of the Southwest v Falcon*, 457 US 147, 155; 102 S Ct 2364; 72 L Ed 2d 740, 749 (1982).

61. Here, where there are likely thousands of aggrieved individuals who could

bring the same causes of action alleged herein, all relying on the same few

questions of law and fact, a class action is far superior to the inefficient

bringing of hundreds or thousands of individual actions within this Court.

Class certification will be upheld "so long as general knowledge and

common sense indicate that joinder would be impracticable" *Young v*

*Nationwide Mut Ins Co*, 693 F3d 532, 541 (CA 6, 2012).

## COUNT I
## VIOLATION OF 18 USC § 1962 (R.I.C.O. VIOLATION)
### (*As to all Plaintiffs and Defendants Wayne J. Miller and Miller & Tischler, PC.*)

62. Plaintiffs incorporate by reference the above numbered paragraphs as if fully

restated herein.

63. Defendant Wayne J. Miller willfully or knowingly[1] committed or conspired to commit the aforementioned unlawful "racketeering activity" by way of forcing Medicaid beneficiaries to pay private rates/additional sums for medical services which were already "paid in full" by the Medicaid program.

64. Defendant Miller has done this many times over many years, through the separate enterprise of Miller & Tischler, PC.

65. Upon information and belief, Defendant Miller has negotiated checks derived from this illegal conduct into accounts at federally insured financial institutions, thus effecting interstate commerce.

WHEREFORE Plaintiffs respectfully ask that this Court grant a judgment in favor of the named and Class A Plaintiffs in the amount of triple the total payments which it illegally sought and received from Plaintiffs and/or their representatives over the prior four years.

## COUNT II
## VIOLATION OF 42 U.S.C. §1320a-7a(a)
### (*As to the all Plaintiffs and Defendant VHS of Michigan, LLC*)

---

[1] Attorney Miller has actual or constructive knowledge that his actions have been illegal as he was the counsel of record for the medical service provider in *Spectrum Health Continuing Care Group v Anna Marie Bowling Irrevocable Trust*, 410 F3d 304 (CA 6, 2005), a case in which the Sixth Circuit held that these activities were "prohibited by federal and state Medicaid law." *Id.* at 307-08. It should be noted that the Court in Spectrum, supra, assessed costs and sanctions against Plaintiff in that case.

66. Plaintiffs incorporate by reference the above numbered paragraphs as if fully restated herein.

67. Each medical provider defendant was required to sign, and did sign, through its chief administrator or his or her designee, the Michigan Medicaid provider agreements in which the defendant certified, among other things, that it would comply with all applicable federal and state laws and regulations, including those alleged in this complaint to have been violated. The Michigan Medicaid program would not pay for a provider's claim for services which were known to be in violation of said laws and regulations.

68. Each medical provider defendant willingly and knowingly charged for services provided to a patient under the Michigan State plan approved under subchapter XIX of Title 42, Chapter 7, of the United States Code, on numerous occasions over many years, money at a rate in excess of the rates established by the Michigan Medicaid program.

69. The named and Class A plaintiffs were thus greatly damaged in the amount which they had to pay Defendants as a result of Defendants' unlawful debt collection practices.

WHEREFORE Plaintiffs respectfully ask that this Court grant a judgment in favor of the named and Class A Plaintiffs in the amount of triple the total payments which it illegally sought and received from Plaintiffs and/or their representatives.

**COUNT III**
**UNJUST ENRICHMENT**
(*As to all Plaintiff and all Defendants*)

70. Plaintiffs incorporate by reference the above numbered paragraphs as if fully restated herein.

71. Defendants each received a benefit from Plaintiffs in the form of payments for services which exceeded the amounts that the Defendants had already accepted as "payment in full" from the Medicaid program.

72. Defendants received said benefits and Plaintiffs' great expense and Plaintiffs had no duty to bestow said benefits upon Defendants, and received no benefit in return.

73. Under the circumstances, it would be unjust for the Defendants to retain the benefits which were wrongly sought and received by Defendants.

WHEREFORE Plaintiffs respectfully ask that this Court grant a judgment in favor of the named and Class A Plaintiffs in the amount of the total payments which it illegally sought and received from Plaintiffs and/or their representatives over the prior six years.

**CONCLUSION AND RELIEF REQUESTED**

Each of the above defendants have knowingly and unjustly abused the taxpayer-funded Medicaid program for years. These service providers have each greedily instituted policies essentially converting the Medicaid program into a bank

for them, offering interest free financing loans, while the patients that Defendants serve are forced to fight to repay those loans many-fold. The United States Sixth Circuit has held that Defendants actions are illegal, and Defendants have no defense for their actions and should be subject to the full penalties available under the law, in consideration of the classes of victims which Defendants have created.

WHEREFORE, for the foregoing reasons and more, Farid Hermiz, as personal representative of the Estate of Myra Hermiz, and all others similarly situated, humbly requests that this honorable Court enter a judgment and order containing the following relief:

A. That this Court find Defendants violated Medicaid laws and regulations by seeking reimbursement from Plaintiffs for the balance of charges for services covered and paid under Medicaid;

B. That Defendants be compelled to provide an accounting of all the sums which they have received for medical services rendered, in all instances in which those sums include Medicaid reimbursement and funds from any other source;

C. That Defendants be compelled to provide to Plaintiffs' counsel records identifying individuals (or their representatives) whom the Defendants have pursued and/or from whom they have received payments for medical services which were previously paid for by Medicaid, including name,

address, date and amount of Medicaid payment, caption of case in which they pursued additional sums and the amounts of additional sums received, amount of attorney fees paid to their own Counsel and the date and amount of reimbursement made to Medicaid for each individual the amounts of each item billed to Medicaid;

D. Compelling the immediate disgorgement and escrow of all sums, plus interest, collected from individuals or their representatives/attorneys, for whose medical services Medicaid paid Defendants and as to which Defendants then sought and/or received payment for said services from any other source including but not limited to personal injury litigation and Michigan No Fault Litigation

E. That this Court grant a judgment in favor of the Plaintiffs and against the Defendants in treble the amount of the total payments which it illegally sought and received from Plaintiffs and/or their representatives;

F. All damages available pursuant to the RICO Statute

G. Award Plaintiffs costs, interest, expert witness and attorney fees.

H. Such other further relief as the Court deems just and equitable.

Respectfully submitted:

THE DAILEY LAW FIRM

*/s/Brian Thomas Dailey*
Brian Thomas Dailey (P39945)
William D. Savage (P82146)
*Attorneys for Plaintiffs*
63 Kercheval Avenue, suite 215
Grosse Pointe Farms, MI 48236
P: 313-640-1111 | F: 313-640-9999
briandailey@daileylawyers.com
Dated: November 8, 2022     will@daileylawyers.com

## DEMAND FOR TRIAL BY JURY

In accordance with their rights, Plaintiffs hereby request a trial by a jury of their peers on all counts of the above-complaint.

Respectfully submitted:

THE DAILEY LAW FIRM

*/s/Brian Thomas Dailey*
Brian Thomas Dailey (P39945)
William D. Savage (P82146)
*Attorneys for Plaintiffs*
63 Kercheval Avenue, Suite 215
Grosse Pointe Farms, MI 48236
P: 313-640-1111 | F: 313-640-9999
briandailey@daileylawyers.com
Dated: November 8, 2022      will@daileylawyers.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I filed the foregoing documents and any attachments with the Clerk of Courts via the electronic filing system.

Respectfully submitted:

THE DAILEY LAW FIRM

<u>/s/William D Savage</u> (P82146)
*Attorneys for Plaintiffs*
63 Kercheval Avenue, Suite 215
Grosse Pointe Farms, MI 48236
P: 313-640-1111 | F: 313-640-9999
Dated: November 8, 2022    will@daileylawyers.com