UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FARID HERMIZ, as Personal
Representative of the Estate of
MYRA HERMIZ, and All Others
Similarly Situated,

         Plaintiff,

v.
                                     Civil Case No. 22-12707
                                     Honorable Linda V. Parker

WAYNE J. MILLER, VHS OF
MICHIGAN, INC., d/b/a
DETROIT MEDICAL CENTER,
and MILLER & TISCHLER, P.C.,

         Defendants.
_____/

## OPINION AND ORDER GRANTING
## DEFENDANTS' MOTIONS TO DISMISS

This lawsuit arises from the treatment of Plaintiff's decedent, Myra Hermiz,

at Detroit Receiving Hospital in late 2016 after she was injured as a passenger in

an automobile accident. Plaintiff, the Personal Representative of Ms. Hermiz'

estate, claims Defendants have wrongfully pursued the cost of that treatment from

Ms. Hermiz, her family, or her estate. Defendant VHS of Michigan, Inc. ("VHS")

owns and operates Detroit Receiving Hospital and numerous other medical

facilities throughout Michigan. VHS hired Defendant Miller & Tischler, P.C., of

which Defendant Wayne J. Miller is the managing partner (collectively "Miller Defendants"), to act as VHS' collection counsel.

Plaintiff initiated this action on November 8, 2022, and filed a First Amended Complaint ("FAC") seventeen days later asserting the following claims: (I) violation of Civil Monetary Penalties Law ("CMPL"), 42 U.S.C. § 1320a-7a(a), against VHS; (II) civil conspiracy against all Defendants; (III) unjust enrichment against all Defendants; (IV) violations of the Fair Debt Collections Practices Act ("FDCPA") against the Miller Defendants; and (V) injunctive relief.[1]  VHS moves to dismiss Plaintiff's FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF No. 18.)  The Miller Defendants move to dismiss the FAC citing only Federal Rule of Civil Procedure 12(c); however, one of their arguments is that federal subject matter jurisdiction is lacking pursuant to the *Rooker-Feldman*[2] doctrine and, to that extent, their motion is brought also pursuant to Federal Rule of Civil Procedure 12(b)(1).  (ECF No. 19.)

---

[1] "Injunctive relief" is not a substantive legal claim, rather it is a remedy which can be granted if the plaintiff prevails on a separate cause of action.  *See Goryoka v. Quicken Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013); *Terlecki v. Stewart*, 754 N.W.2d 899, 912 (Mich. Ct. App. 2008).

[2] *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

Both motions have been fully briefed.  (ECF Nos. 24-27.)  Finding the facts and legal arguments adequately presented in the parties' briefs, the Court is dispensing with oral argument with respect to Defendants' motions pursuant to Eastern District of Michigan Local Rule 7.1(f).

## I.    Standards of Review

A motion for judgment on the pleadings pursuant to Rule 12(c) is subject to the same standard of review as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted.  *Hindel v. Husted*, 875 F.3d 344, 346 (6th Cir. 2017) (citing *Barany-Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)).  A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  This presumption is not applicable to legal conclusions, however.  *Iqbal*, 556 U.S. at 668.  Therefore,

3

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

When deciding a Rule 12(b)(6) or Rule 12(c) motion, the court ordinarily may not consider matters outside the pleadings. *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)). A court that considers such matters must first convert the motion to dismiss to one for summary judgment. *See* Fed. R. Civ. P 12(d). However, the court "may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

A motion to dismiss pursuant to Rule 12(b)(1) challenges the court's subject matter jurisdiction. "Rule 12(b)(1) motions to dismiss . . . generally come in two varieties: a facial attack or a factual attack." *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007). The Miller Defendants assert the former. A facial attack challenges the sufficiency of the pleading itself. In that instance, the court accepts the material allegations in the complaint as true and construes them in the light most favorable to the nonmoving party. *United States*

4

*v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974)).

## II.    Factual & Procedural Background

Ms. Hermiz suffered serious injuries in an automobile collision on November 3, 2016. (ECF No. 7 at Pg ID 96, ¶ 13.) Finding life unbearable due to her injuries, Ms. Hermiz took her own life on January 29, 2021. (*Id*. at Pg ID 97, ¶ 14.)

Following the accident, Ms. Hermiz was treated at Detroit Receiving Hospital. (ECF No. 7-1 at Pg ID 115.) Sometime thereafter, VHS referred its claim for payment of the $27,746.62 medical bill for Ms. Hermiz' treatment to the Miller Defendants. (ECF No. 7 at Pg ID 97, ¶ 17.) On January 4, 2017, Medicaid paid VHS $300.00 for the medical services rendered to Ms. Hermiz, who, Plaintiff alleges, was "a Medicaid-eligible patient at that time the services were rendered in November 2016." (*Id.* ¶ 15.)

Ms. Hermiz and her father, Farid Hermiz, submitted a claim for benefits through a Citizens Insurance Company policy issued to Mr. Hermiz. (ECF No. 7-1 at Pg ID 115.) They sued Citizens in Wayne County Circuit Court for uninsured and personal injury protection ("PIP") benefits on July 16, 2019. (ECF No. 7 at Pg

ID 98, ¶ 20.)  On August 28, 2020, the court ordered Citizens to pay Ms. Hermiz the statutory mandated PIP benefits.  (*Id*. ¶ 22.)

On November 19, 2020, Citizens issued a check for $27,589.62 made payable to "Detroit Receiving Pharmacy" and the Dailey Law Firm, PC—Ms. Hermiz' attorney in the state court action and current counsel in the pending matter—because counsel claimed to have an attorney lien.  (*Id.* at Pg ID 99, ¶ 24; ECF No. 7-1 at Pg ID 116.)  VHS refused to endorse the check (ECF No. 7 at Pg ID 99, ¶ 25), as did the Dailey Law Firm (ECF No. 7-1 at Pg ID 116).

On January 5, 2021, VHS sued the Dailey Law Firm in Wayne County Circuit Court claiming conversion of the insurance proceeds and seeking treble damages, *VHS of Mich., Inc. d/b/a Detroit Med. Ctr. v. Dailey Law Firm, P.C.*, No. 21-000127-CK (Wayne Cnty. Cir. Ct. filed Jan. 5. 2021).  (ECF No. 7 at Pg ID 99, ¶ 27); *https://cmspublic.3rdcc.org*.  That lawsuit was administratively closed due to bankruptcy on August 9, 2023.  *See https://cmspublic.3rdcc.org*.

On September 9, 2021, VHS, through the Miller Defendants, filed an independent collection action against Plaintiff in Macomb County Circuit Court, seeking the cost of treating Ms. Hermiz.  (ECF No. 7 at Pg ID 99, ¶ 26); *see also https://perma.cc/VM5F-XDSL*.  VHS subsequently filed a motion for default judgment, which was heard and granted by the state court on December 13, 2021.

(ECF No. 7 at Pg ID 99, ¶ 26); *https://perma.cc/VM5F-XDSL*.  On December 14,

the state court issued a default judgment in favor of VHS and against Plaintiff in

the amount of $27,746.62 (ECF No. 7 at Pg ID 99, ¶ 26); *see*

*https://perma.cc/VM5F-XDSL*, which Plaintiff alleges was "unlawful[,]" (ECF No.

7 at Pg ID 99, ¶ 26).  No appeal from the judgment was taken.  *See*

*http://courtpa.macombgov.org/eservices*.

III.    **Parties' Arguments**

    A.    **VHS' & The Miller Defendants' Arguments for Dismissal of the SAC**

VHS seeks dismissal of Plaintiff's claims arguing foremost that there is no

private right of action under the CMPL.  VHS maintains that Plaintiff's remaining

claims against it (civil conspiracy and unjust enrichment) fail because they are

premised on a violation of the CMPL or, alternatively, that the Court should

decline to exercise supplemental jurisdiction over these state-law claims.  VHS

also argues that Plaintiff's unjust enrichment claim should be dismissed because

there is no allegation that Plaintiff conferred a benefit on VHS or that VHS

accepted or retained an *unjust* benefit.

In their motion to dismiss, the Miller Defendants first argue that this Court

lacks jurisdiction over Plaintiff's claims under the *Rooker-Feldman* doctrine.  The

Miller Defendants maintain that this action is a collateral attack on the default

judgment awarded to VHS by the Macomb County Circuit Court.  Additionally,

the Miller Defendants argue, Plaintiff's claims are premised on an incorrect

interpretation of Michigan and federal law.  They argue that VHS is not precluded

under the prohibition on "balance billing" from pursuing the medical bills for

treating Ms. Hermiz because her entitlement to PIP benefits rendered her

nonindigent and therefore ineligible for Medicaid benefits.  As Plaintiff's claims

are all premised on this alleged misunderstanding of the law, the Miller Defendants

argue that the claims fail.

The Miller Defendants also argue that Plaintiff's civil conspiracy claim fails

because there can be no conspiracy between an attorney and his or her client as

they are not considered separate entities.  The Miller Defendants further argue that

Plaintiff's unjust enrichment claim fails for the reasons articulated by VHS.

### B.    Plaintiff's Response

Plaintiff fails to respond to VHS' argument with respect his CMPL claim but

instead argues that the Court should grant him leave to file an attached proposed

second amended complaint ("proposed SAC").[3]  In the proposed SAC, Plaintiff

seeks to substitute his CMPL claim with a claim under the federal Declaratory

_____

[3] Plaintiff also spends considerable time in his response brief arguing that he has standing (*see* ECF No. 24 at Pg ID 233-37), but no challenge to Plaintiff's standing has been raised.

8

Judgment Act, 28 U.S.C. § 2201.  Plaintiff seeks a declaration as to "[Ms. Hermiz'] rights under the federal Medicaid statutes entitling her to her Medicaid benefits as payment in full for Defendant DMC's services, and informing Defendant DMC that they [sic] have no right to renege on their [sic] contract with Michigan to not pursue [Ms. Hermiz], her family, or her representatives."  (ECF No. 24-1 at Pg ID 268, ¶ 65.)

Plaintiff's proposed SAC includes the FAC's civil conspiracy and unjust enrichment claims against VHS and the Miller Defendants, the FDCPA claim against the Miller Defendants, and the "claim" for injunctive relief.  (*See generally* ECF No. 24-1.)  The proposed SAC also includes a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against Defendants.  (*Id.* at Pg ID 270-272), a breach of contract claim against VHS (*id.* at 272-73), and a tortious interference with contract claim against the Miller Defendants (*id.* at Pg ID273-74).

As to the Miller Defendants' argument under the *Rooker-Feldman* doctrine, Plaintiff maintains that the Supreme Court has repudiated the doctrine and "it is more likely than not that the . . . doctrine no longer exists."  (ECF No. 25 at Pg ID 299.)  In any event, Plaintiff argues that the doctrine does not apply to default

9

judgments.  As to his asserted misinterpretation of state and federal law, Plaintiff

responds that Defendants' actions do violate the prohibition on balance billing.

Turning to Defendants' arguments addressed to specific claims, Plaintiff

responds that they engaged in a civil conspiracy by agreeing that the Miller

Defendants would seek to enforce an invalid lien and, in doing so, violated public

policy.  Plaintiff also argues that any contract between VHS and the Miller

Defendants for the latter to serve as VHS' collection counsel is legally void and

thus the concept that an agent and principal cannot conspire together has no

applicability.  As to his unjust enrichment claim, Plaintiff asserts that Michigan

law does not require that the benefit be conferred directly by the plaintiff to the

defendant and that Defendants undisputedly received $27,589.62 belonging to

Plaintiff either as a secured lien (VHS) or in part as a contingency fee (the Miller

Defendants).

### C.    VHS' and the Miller Defendants' Arguments with Respect to Plaintiff's Proposed SAC

Defendants first argue that Plaintiff's request to file the proposed SAC

should be denied as he did not file a proper motion under Federal Rule of Civil

Procedure 15 or Eastern District of Michigan Local Rule 15.1.  With respect to

Plaintiff's claim under the Declaratory Judgment Act, VHS maintains that the

statute confers discretion on the federal courts as to whether to issue a declaratory

judgment and that federal jurisdiction is unwarranted here where a state court already entered a default judgment in favor of VHS for the payment Plaintiff now claims is wrongfully sought by VHS and where the only pending dispute is between VHS and Plaintiff's counsel which is being litigated in state court.  As to Plaintiff's proposed RICO claim, Defendants assert that the claim is futile.

### III.   Applicable Law & Analysis

#### A.   Plaintiff's Request to Amend the Complaint

Here, where Plaintiff has amended his pleading once already, he may file a second amended complaint only with Defendants' "written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Rule 15 provides that leave should be freely given "when justice so requires." *Id*.  However, leave to amend should be denied if the amendment is brought in bad faith or for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Parchman v. LM Corp.*, 896 F.3d 728, 736 (6th Cir. 2018) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Sixth Circuit has expressed that "[a]lthough a motion is the form most commonly used by parties seeking an amendment, no specific procedure is set forth in Rule 15 for amendments, and a variety of methods have been recognized as sufficient." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982) (citing 6 Wright

& Miller, Fed. Practice & Proc. § 1485 (1971 & 1981 Cum. Supp.)); *see also Forrester v. Am. Sec. & Prot. Serv., LLC*, No. 21-5870, 2022 WL 1514905, at *10 (6th Cir. May 13, 2022) (citing *Tefft*, 689 F.2d at 639) (White, J., concurring in part and dissenting in part).  The Local Rules for the Eastern District of Michigan also do not specify that a request for leave to amend must be made through a separate motion.  Nevertheless, "a bare request [to file an amended pleading] in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought . . . does not constitute a motion within the contemplation of Rule 15(a)." *La. Sch. Emps.' Ret. Sys. v. Ernst & Young LLP*, 622 F.3d 471, 486 (6th Cir. 2010) (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir. 2004)).  Stated differently, "[a] request for leave to amend 'almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is not a motion to amend.'" *Id.* (quoting *Begala v. PNC Bank*, 214 F.3d 776, 784 (6th Cir. 2000)) (ellipsis omitted).

Yet, in Plaintiff's response brief, he did not simply convey a request to amend his pleading if the Court is inclined to grant Defendants' motions.  *Cf. La. Sch. Emps.' Ret. Sys.*, 622 F.3d at 486 (indicating that the plaintiffs did not file a motion but simply stated in response to the motion to dismiss: "Should the Court grant any portion of Ernst & Young's motion to dismiss, Plaintiffs respectfully

12

request an opportunity to move to amend the pleadings and demonstrate that an amendment would cure any deficiencies"); *C&L Ward Bros., Co. v. Outsource Sols., Inc.*, 547 F. App'x 741, 745 (6th Cir. 2013) (agreeing with the district court that the plaintiff's statements were insufficient to properly seek leave to amend where he simply requested leave *if* the court found the allegations in his current pleading insufficient and where he offered no "indication of the grounds upon which the amendment [was] sought and the general contends of the amendment"). Instead, Plaintiff attached the proposed SAC to his opposition to VHS' motion, which details the amendments sought and the grounds upon which they rest.  He also discussed the proposed amendments in his opposition brief, explaining why he believes his amendments are not futile.  The Court addresses futility below.

    **B.**    **The *Rooker-Feldman* Doctrine**

    While both the Supreme Court and Sixth Circuit have "chastised lower federal courts for extending the [*Rooker-Feldman*] doctrine 'far beyond' its proper scope[,]" *Van Hoven v. Buckles & Buckles, PLC*, 947 F.3d 889, 892 (6th Cir. 2020) (quoting *Skinner v. Switzer*, 562 U.S. 521, 532 (2011)), the doctrine—contrary to Plaintiff's assertion—remains very much alive.  *See RLR Invs., LLC v. City of Pigeon Forge*, 4 F.4th 380, 387, 395 (2021) (explaining that "the Supreme Court didn't end *Rooker-Feldman*" in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,

13

544 U.S. 280 (2005), and finding the doctrine applicable in the case before it). The doctrine "is confined to . . . cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* at 387 (quoting *Exxon*, 544 U.S. at 284).

Plaintiff argues that *Rooker-Feldman* does not apply to default judgments; however, Plaintiff conflates claim and issue preclusion with *Rooker-Feldman* in making this argument. Further, the case Plaintiff cites that does consider the *Rooker-Feldman* doctrine, *Vendarkodde v. Mary Jane M. Elliott, PC*, 951 F.3d 397 (6th Cir. 2020), did not involve a default judgment but a writ of garnishment and the post-judgment interest rate applied in calculating the plaintiff's debts. *Id.* at 400-01. The Sixth Circuit in fact has applied the *Rooker-Feldman* doctrine to bar an attack on a default judgment entered in state court. *Minix v. Stone*, No. 21-5489, 2022 WL 3031259 (6th Cir. Feb. 7, 2022); *Johnson El v. JP Morgan Chase Bank Int'l Ass'n*, No. 16-2465, 2017 WL 4863167 (6th Cir. June 1, 2017); *see also In re Lindsay*, No. 20-1339, 2021 WL 278317, at *5 (S.D.N.Y. Jan. 27, 2021) (citing *Neshewat v. Salem*, 194 F. App'x 24 (2d Cir. 2006); *Ballyhighlands, Ltd. v. Bruns*, No. 98-9373, 1999 WL 377098, at *2 (2d Cir. May 28, 1999)); *In re Long*,

No. 14-13592, 2014 WL 4629096, at *1 (D. Md. Sept. 15, 2014) (collecting cases

applying *Rooker-Feldman* to default judgments).

Again, "*Rooker-Feldman* applies in '(1) cases brought by state-court losers

(2) complaining of injuries caused by state-court judgments (3) rendered before the

district court proceedings commenced (4) and inviting district court review and

rejection of those judgments.'"  *RLR Invs.*, 4 F.4th at 387 (quoting *Exxon*, 544 U.S.

at 284) (brackets omitted).  The first and third requirements are easily satisfied

here.  Plaintiff lost in the Macomb County Circuit Court in that a default judgment

was entered against him.  The default judgment was entered almost a year before

this federal lawsuit was filed.

To decide whether a plaintiff seeks review of a state-court judgment, a court

must look to the "source of the injury the plaintiff alleges in the federal complaint,"

*McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006), and consider what

relief the plaintiff requests, *VanderKodde*, 951 F.3d at 402.  "The test is whether

the plaintiff's injury stems from the state-court judgment, not whether the claims

[in the state and federal cases] are identical."  *RLR Invs.*, 4 F.4th at 388.  If the

defendant's alleged misconduct is independent from the state-court judgment,

*Rooker-Feldman* does not apply.  *McCormick*, 451 F.3d at 392.  This is true even if

the "federal plaintiff 'presents some independent claim, albeit one that denies a

legal conclusion that a state court has reached in a case to which he was a party[.]'"

*Id*. (quoting *Exxon*, 544 U.S. at 293).

In *McCormick*, the Sixth Circuit offered "two instructive examples" to distinguish between claims attacking state court judgments and independent claims for which *Rooker-Feldman* does not apply:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 394 (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 87-88 (2d Cir. 2005)). The Sixth Circuit recognized exceptions where third-party

16

conduct may not be independent of a state court judgment for *Rooker-Feldman*

purposes.  "For example, if a third party's actions are the product of a state court

judgment, then a plaintiff's challenge to those actions are in fact a challenge to the

judgment itself."  *Id.* (citing *Hoblock*, 422 F.3d at 88).

      Plaintiff does not ask this Court to declare the Macomb County Circuit

Court's default judgment void or incorrectly issued—although he asserts it is

unlawful in his pleadings (*see, e.g.*, ECF No. 24-1 at Pg ID 257, ¶ 26).  Instead,

Plaintiff seeks a determination in his various claims that Defendants unlawfully

sought to collect the cost of Ms. Hermiz' hospitalization.  In other words, all of

Plaintiff's claims are premised on his assertion that Defendants illegally pursued

payment of these costs from Ms. Hermiz, her family, or her representatives.  (*See*

*id.* at Pg ID 268, ¶ 65 (seeking a declaration that VHS had "no right to renege on

their [sic] contract with Michigan to not pursue Plaintiff, her family, or her

representatives"); *id.*, ¶ 67 (basing his civil conspiracy claim on Defendants

"act[ing] in concert . . . for the illegal purpose of pursuing and/or collecting funds

in additions to the amounts reimbursed by Medicaid"); *id.* at Pg ID 269, ¶ 71

(alleging that Defendants were unjustly enriched by receiving from Plaintiff

"payments for services which exceeded the amounts that the Defendants had

already accepted as 'payment in full' from the Medicaid program"); *id.* at Pg ID

17

270, ¶ 78 (claiming that the Miller Defendants violated the FDCPA

by . . . pursuing and collecting debts that are not owed under any valid agreement

or the law").  Plaintiff is asserting an injury based on Defendants' actions rather

than the default judgment itself.[4]  Any determination by this Court that Defendants

unlawfully pursued those costs certainly will be contrary to the Macomb County

Circuit Court's determination when issuing the default judgment that VHS is

entitled to those costs.  Nevertheless, this does not preclude federal jurisdiction

under *Rooker-Feldman*.  *McCormick*, 541 F.3d at 392 (quoting *Exxon*, 544 U.S. at

293).

    **C.**    **Premise of Plaintiff's Claims**

    As the above excerpts from Plaintiff's proposed SAC reflect, all of his

claims are predicated on his assertion that it was unlawful for VHS to collect

$27,746.62 for the treatment of Ms. Hermiz at Detroit Receiving Hospital after

Medicaid paid VHS $300 for those services.  According to Plaintiff, this

constituted unlawful "balance billing."  The Miller Defendants contend that the

---

[4] The result would be different if Plaintiff were seeking a declaration that the
default judgment is void or an injunction barring VHS' enforcement of the default
judgment.  *McCormick*, 451 F.3d at 394 (citing *Hoblock*, 422 F.3d at 88).

foundation of Plaintiff's claims is an incorrect interpretation of Michigan and

federal law.  The Court concludes that the Miller Defendants are correct.

The Sixth Circuit provided a summary of the relevant Medicaid law in

*Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable*

*Trust Dated June 27, 2002*, 410 F.3d 304 (2005) ("*Spectrum*"):

> In 1965, Congress established Medicaid through Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, to provide medical care to low-income families and individuals. *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1210 (6th Cir. 1997).  The Medicaid program is "based on a scheme of cooperative federalism," *King v. Smith*, 392 U.S. 309, 316, 88 S. Ct. 2128, 20 L.Ed.2d 1118 (1968), in which a state elects to adopt a plan providing medical care to its low-income citizens in return for the federal government subsidizing the bulk of the plan's financial obligations. *Barney*, 110 F.3d at 1210.  A state is not required to participate in the program, but once it chooses to do so, the state's plan must comply with federal statutory and regulatory standards. *Pa. Med. Soc'y v. Snider*, 29 F.3d 886, 888 (3d Cir. 1994); 42 U.S.C. §§ 1396a(b); 1396c.  The State of Michigan elected to participate in the Medicaid program and therefore must comply with all aspects of federal law.  *See* Mich. Comp. Laws Ann. § 400.105(1).

> One of the federal statutory requirements is that a state plan must establish payment rates for the various services provided under the plan.  42 U.S.C. § 1396a(a)(30). . . . A health-care provider is not required to participate in the Medicaid program, but rather voluntarily contracts with the state to provide services to Medicaid-eligible patients in return for reimbursement from the state at the specified rates. *Barney*, 110 F.3d at 1211; *Linton by Arnold v. Comm'r of Health & Env't*, 65 F.3d 508, 515 (6th Cir. 1995), *cert. denied*, 517 U.S. 1155, 116 S. Ct. 1542, 134 L.Ed.2d 646 (1996).  Though the Medicaid rates are typically lower than a service provider's customary fees, "medical service providers must accept the state-approved Medicaid payment as payment-in-full, and may not require that

patients pay anything beyond that amount." *Barney*, 110 F.3d at
1210.  Moreover, even when a third party is subsequently found liable
for the Medicaid beneficiary's medical expenses, the service provider
"may not seek to collect from the individual (or any financially
responsible relative or representative of that individual) payment of an
amount for that service."  42 U.S.C. § 1396a(a)(25)(C).  The
accompanying federal regulations mandate that a state "must limit
participation in the Medicaid program to providers who accept, as
payment in full, the amounts paid by the agency plus any deductible,
coinsurance or copayment required by the plan to be paid by the
individual."  42 C.F.R. § 447.15.  Consistent with this federal
regulation, service providers in the Michigan Medicaid program must
"accept payment from the state as payment in full by the medically
indigent individual for services received."  Mich. Comp. Laws Ann.
§ 400.111b(14).  Moreover, "a provider shall not seek payment from
the medically indigent individual, the family, or representative of the
individual for authorized services provided and reimbursed under the
program."  *Id*.  The restriction on a service provider prohibiting it
from recovering the balance between its customary fee and the
Medicaid payment is commonly referred to as the prohibition against
"balance billing."  *Palumbo v. Myers*, 149 Cal.App.3d 1020, 1025,
197 Cal.Rptr. 214 (Cal. Ct. App. 1983).

*Spectrum*, 410 F.3d at 313-14.

In *Spectrum*, the Sixth Circuit held that the balance billing prohibition

precluded the plaintiff from seeking enforcement of its lien for the costs of medical

services provided to its patient on the settlement proceeds from the patient's

personal injury lawsuit against a third party.  *Id*. at 314-16.  This holding is

consistent with the additional cases cited by Plaintiff in response to the Miller

Defendants' argument (*see* ECF No. 25 at Pg ID 294-96), where the courts held

that medical providers could not pursue third-party settlement proceeds or a third-

party tortfeasor after accepting Medicaid payments, *see, e.g., Evanston Hosp. v Hauck*, 1 F.3d 540, 542 (7th Cir. 1993) (holding that hospital could not refund partial payment accepted from Medicaid in order to pursue "sizable judgment against [a] third-party tortfeasor"); *Mallo v. Pub. Health Tr.*, 88 F. Supp. 2d 1376, 1387 (S.D. Fla. 2000) (concluding that a patient could sue a health care provider that enforced its lien against the settlement of the patient's personal injury lawsuit against the manufacturer of the tire which exploded and caused the plaintiff's injuries, after the medical provider accepted Medicaid disbursement for the patient's care); *Lizer v. Eagle Air MedCorp.*, 308 F. Supp. 2d 1006, 1010 (D. Ariz. 2004) (holding that federal Medicaid statute precluded health care provider from recouping balance of its customary payment from third-party settlement proceeds after accepting Medicaid payment).

Unlike those cases, however, Defendants have not sought to collect the amount owed to VHS for Ms. Hermiz' care from monies received or awarded from a third-party tortfeasor. Instead, VHS is claiming a right to the PIP benefits that the Wayne County Circuit Court ordered Citizens to pay under Mr. Hermiz' no-fault insurance policy. The Michigan courts have held that when an individual is entitled to receive no-fault PIP benefits when injured in an automobile accident,

21

the individual is not statutorily eligible to receive state Medicaid benefits.[5]

*Workman v. Detroit Auto. Inter-Ins. Exch.*, 274 N.W.2d 373, 381-83 (Mich. 1979);

*Hicks v. Citizens Ins. Co. of Am.*, 514 N.W.2d 511, 513 (Mich. Ct. App. 1994);

*Johnson v. Mich. Mut. Ins. Co.*, 446 N.W.2d 899, 901 (Mich. Ct. App. 1989).  The

Michigan Court of Appeals has further held that "[t]he fact that, with hindsight,

Medicaid benefits were mistakenly paid on [the injured party]'s behalf does not

release [that party]'s responsibility for the medical expenses incurred but not paid

for, nor does it bind [the medical provider] to limit its claim to the statutory

amount allowed for [M]edicaid benefits."[6]  *Hicks*, 514 N.W.2d at 513 (citing

*Botsford Gen. Hosp. v. Citizens Ins. Co.*, 489 N.W.2d 137, 138 (Mich. Ct. App.

––––––––––––––––––––

[5] In contrast, in the cases discussing injured parties who receive awards or settlements in litigation against third-party tortfeasors after receiving Medicaid benefits, the courts do not find that the individuals were or have become medically nonindigent and therefore ineligible for Medicaid benefits as a result of their litigation success.  Plaintiff asserts that the injured party in *Spectrum* "bec[ame] nonindigent under Michigan Medicaid law."  (*See* ECF No. 25 at Pg ID 294.)  However, there is nothing in the Sixth Circuit's decision finding or suggesting that the patient became nonindigent and therefore ineligible for Medicaid benefits upon receiving the settlement proceeds of her tort claims.  There also is no suggestion in *Spectrum* that, if the medical provider was permitted to pursue the proceeds from that third-party litigation, Medicaid could seek reimbursement for any amounts paid.

[6] Where Medicaid is mistakenly paid on behalf of a medically nonindigent individual, Medicaid may seek reimbursement for those amounts.  *Workman*, 274 N.W.2d at 382-83 (citing Mich. Comp. Laws §§ 400.106(2)(b), 400.107).

1992)); *see also Oostdyk v. Auto Owners Ins. Co.*, No. 317221, 2014 WL 7440911, at *11 (Mich. Ct. App. Dec. 30, 2014) (explaining that because the injured party was entitled to PIP benefits and therefore did not qualify as a medically indigent individual eligible for medical assistance under the state Medicaid program, the medical providers "were entitled to 'charge a reasonable amount' for services rendered, . . and were not limited to contractual amounts or statutory amounts allowed for Medicaid benefits"); *Trent v. Bristol W. Preferred Ins. Co.*, No. 357787, 2022 WL 4391231, at *3 (Mich. Ct. App. Sept. 22, 2022) (agreeing with the plaintiff that, if the finder of fact concluded her injuries arose from a motor vehicle accident and she therefore was entitled to receive PIP benefits and was medically nonindigent, she remained liable for the medical provider's outstanding bills even though a portion had been paid by Medicaid).

Plaintiff's claims therefore are based on an incorrect interpretation of state and federal Medicaid law, or at least a misapplication of that law to the facts of this case. The Wayne County Circuit Court found that Ms. Hermiz was entitled to PIP benefits for her injuries in the November 2016 automobile accident as a resident relative under Mr. Hermiz' no-fault insurance policy. As such, Ms. Hermiz was medically nonindigent when she was injured in the accident and treated at Detroit

Receiving Hospital.[7]  She therefore was not entitled to Medicaid benefits.  The fact

that Medicaid payments were mistakenly paid does not preclude VHS from

seeking the medical expenses incurred to treat Ms. Hermiz beyond the statutory

amount allowed for Medicaid benefits.

Plaintiff attempts to distinguish *Hicks* and *Workman* by arguing that VHS

did not "mistakenly" bill Medicaid but did so knowing that Ms. Hermiz was

covered by private insurance.  (*See* ECF No. 25 at Pg ID 293.)  Plaintiff apparently

reads the holdings in *Hicks* and *Workman* as being dependent on whether the

medical provider in fact believed the injured party to be medically indigent when

billing Medicaid.  However, neither case focused on or even discussed in any detail

whether the medical provider honestly or in good faith believed the patient to be

entitled to Medicaid benefits.  In *Hicks*, in fact, the court merely presumed that the

provider was "*[a]pparently* under the impression" that the individual was indigent.

514 N.W.2d at 512.

Moreover, if a medical provider knows that a patient is in fact entitled to PIP

benefits and therefore medically nonindigent, it seems surprising that the provider

would seek reimbursement from Medicaid and thus limit the amount it could

_____

[7] Plaintiff's allegation to the contrary need not be accepted as true as it is a legal
conclusion.  *Iqbal*, 556 U.S. at 668; *see also Tackett v. M&G Polymers, USA, LLC*,
561 F.3d 478, 488 (6th Cir. 2009) (citation omitted).

recover to the statutory amount.  *See Mercy Mt. Clemens Corp. v. Auto Club Ins. Ass'n*, 555 N.W.2d 871, 874 (Mich. Ct. App. 1996) (citation omitted) (explaining that no-fault insurers are not free to establish limits that they will pay for particular medical services whereas reimbursements from Medicaid are set by statutory and regulatory limitations).  In any event, nowhere in his proposed SAC does Plaintiff allege that VHS billed Medicaid knowing that Ms. Hermiz in fact was entitled to PIP benefits.  (*See, generally* ECF No. 24-1.)

Plaintiff's claims against Defendants fail as a matter of law because they are premised on an incorrect assertion that Defendants' conduct constituted unlawful double billing.  For that reason, the Court finds it unnecessary to address Defendants' other arguments for dismissal.

## IV.   Conclusion

The Court finds that Plaintiff has properly moved to amend his complaint in response to the motions to dismiss filed by Defendants but concludes that the claims asserted in Plaintiff's proposed SAC, like the claims in his FAC, are futile. The *Rooker-Feldman* doctrine does not bar the claims in Plaintiff's current and proposed pleadings.  However, the success of each of Plaintiff's claims is dependent on his incorrect assertion that Defendants engaged in prohibited double billing by seeking payment of Ms. Hermiz' medical expenses after receiving a

payment from Medicaid.  Because Medicaid benefits were mistakenly paid on Ms.

Hermiz' behalf, those payments did not release Ms. Hermiz, her family, or

representatives from the responsibility for the medical expenses incurred on her

behalf but not paid for, nor did it bind VHS to limit its claim to the statutory

amount allowed for Medicaid benefits.

Accordingly,

**IT IS ORDERED** that the motions to dismiss filed by Defendants (ECF

Nos. 18, 19) are **GRANTED**.

s/ Linda V. Parker
LINDA  V. PARKER
U.S. DISTRICT JUDGE

Dated: September 21, 2023